**SO ORDERED.**

**SIGNED this 2 day of August, 2021.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-02019-5-DMW |
| VINCENT JAMES BORCA<br>PENNYLANE LOVEY BORCA | CHAPTER 13 |
| DEBTORS | |

## ORDER MODIFYING CHAPTER 13 PLAN

This matter comes on to be heard upon the Trustee's Motion to Modify Chapter 13 Plan ("Trustee's Motion to Modify") filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on March 22, 2021 and the Debtors' Amended Response to Trustee's Motion to Modify Chapter 13 Plan ("Response") filed by Vincent James Borca ("Mr. Borca") and Pennylane Lovey Borca ("Ms. Borca") (collectively, "Debtors") on May 5, 2021.  The court conducted hearings in Raleigh, North Carolina on May 5, 2021 and June 10, 2021.  Michael B. Burnett, Esq. appeared for the Trustee, and Travis Sasser, Esq. appeared for the Debtors.  Based upon the pleadings, the arguments of counsel and the case record, including a prior hearing on the Debtors' Motion to Incur Debt and Make Purchase ("Motion to Incur Debt") held on February 24, 2021 and at which both Debtors testified, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on April 23, 2018 ("Petition Date"). In an Order and Notice to Debtor entered on April 25, 2018, the court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302 and ordered as follows:

> *You must notify your attorney and the trustee of any change of mailing address or employment. . . . You must also promptly notify your attorney and the trustee of any substantial changes in your financial circumstances, including substantial changes in your income, expenses, or property ownership. Examples of changes that would require you to give notice include, but are not limited to, if you*
>
> *(a) Get a raise or changes jobs and your income changes substantially* . . . .

(emphasis in Order and Notice to Debtor).

3.      On Schedule I filed with the court on May 8, 2018, the Debtors stated that Mr. Borca worked as a Manager at Five Guys[1] with gross monthly income of $2,341.76, and Ms. Borca worked as a Server/Trainer at Bonefish Grill[2] with gross monthly income of $2,742.76, although the Debtors noted on Schedule I that Ms. Borca's tips varied. Mr. Borca also reported monthly VA disability income in the amount of $1,255.00. On Schedule J, the Debtors listed a residential rental expense of $1,405.00 per month, childcare costs of $600.00 per month and monthly child support costs of $559.00 per month. The Debtors disclosed net income of $783.92 per month.

---

[1] Five Guys is an American fast casual restaurant chain focused on hamburgers, hot dogs, and French fries.
[2] Bonefish Grill is an American casual dining restaurant chain specializing in seafood.

4.      The Debtors were below-median income debtors on the Petition Date and have an applicable commitment period under 11 U.S.C. § 1325(b)(4) of thirty-six months. Despite the Debtors' ability to propose a thirty-six month plan pursuant to 11 U.S.C. §§ 1322(d)(2) and 1325(b)(4), the Debtors' Chapter 13 Plan ("Plan") proposed one payment in the amount of $630.00 followed by fifty-nine payments in the amount of $783.00, for a total repayment period of sixty months ending in April 2023.

5.      The sixty-month repayment period facilitated the Debtors' retention of two encumbered vehicles, a 2006 Hummer H3 and a 2011 Toyota Corolla, and repayment of pre-petition unsecured priority claims totaling approximately $15,413.00, because the Debtors could pay those claims over an extended period of time without exceeding their monthly net income. The Plan did not propose a dividend to general unsecured creditors whose claims total $58,914.99. The court confirmed the Plan on November 1, 2018.

6.      On October 14, 2020, the Debtors filed a motion ("Debtors' Motion to Modify") seeking modification of the Plan and asserting as follows:

> The Debtors need to modify the Chapter 13 plan because they have experienced hardships related to the COVID-19 pandemic and the shutdown orders of the state. Mr. Borca worked for G.58 Cuisine[3] before the shutdown orders. He was laid off in March and began looking for different employment. In June, Mr. Borca began working for Greenview Landscaping. He earns less income now working in landscaping at $14.50 per hour[] for 40 hours a week than what he did with tips at G.58 Cuisine. Additionally, Mrs. Borca works as a restaurant manager, and her pay has been cut in half due to the impact of the COVID-19 pandemic. The restaurant she works for has cut its hours substantially.

The Debtors asserted they had "become strapped financially" and proposed to modify the Plan to require $22,564.00 through October 2020, followed by sixty payments in the amount of $378.00, reduced from the confirmed amount of $783.00. The Debtors' Motion to Modify did not indicate

---

[3] G.58 Cuisine is a restaurant specializing in Chinese cuisine.

3

a change in employer for Ms. Borca and did not provide updated figures for the Debtors' income and expenses.

7. The Trustee objected to the Debtors' Motion to Modify, asserting that for the proposed modification to be feasible, the ongoing payments would need to be $379.00 per month. On November 17, 2020, the court entered a Consent Order modifying the Plan to require $22,564.00 through October 2020, followed by sixty payments in the amount of $379.00 through October 2025 ("Modified Plan").

8. The Modified Plan has a total term of ninety months, stretching seven years from confirmation of the Plan as permitted by 11 U.S.C. § 1329(d) and *West v. Costen*, 826 F.2d 1376, 1378 (4th Cir. 1987). The Trustee projects that under the Modified Plan, general unsecured creditors will receive a dividend of less than one-tenth of one percent on their claims totaling $58,914.99.

9. On January 25, 2021, the Debtors filed the Motion to Incur Debt, seeking court approval to finance the purchase of a residence. The Debtors asserted their rental expense had increased to $1,700.00 per month, and they sought permission to incur a loan that would have a monthly repayment amount not to exceed $2,000.00. The Trustee opposed the Motion to Incur Debt, citing, in part, the Debtors' characterization in the recent Debtors' Motion to Modify that they were strapped financially. The Trustee also noted that under the Modified Plan, the Debtors had reduced their ongoing payments to the Trustee by $404.00 per month, and three months after filing the Debtors' Motion to Modify, the Debtors sought to purchase property that would increase their housing expense by $300.00 per month.

10. At the February 24, 2021 hearing on the Motion to Incur Debt, both Debtors testified about their financial circumstances, including their current employment and expenses.

4

Ms. Borca testified that she now works as a service manager at G.58 Cuisine restaurant,[4] and in 2020 her hours were halved as a result of the coronavirus pandemic. In September 2020, Ms. Borca had gross biweekly income of $1,028.29, and she continued to receive less than full pay until at least November 2020. By February 2021, Ms. Borca was receiving gross biweekly income over $2,000.00, comprising a salary payment ranging between $2,000.00 and $2,071.43 and cash tips ranging from $340.41 to $584.50 per pay period. Ms. Borca testified that the restaurant remained at reduced capacity, but the number of customers using the restaurant's private room had increased. Ms. Borca also stated that the Debtors no longer have a monthly childcare expense of $600.00, because her mother has moved in with the Debtors and provides care for the Debtors' son while he is enrolled in "virtual learning" at home. Ms. Borca testified that she does not anticipate the Debtors' son returning to in-person learning "anytime soon" due to the coronavirus pandemic and her concerns for her mother's health. She also stated that her daughter, for whom she pays monthly child support, would be reaching eighteen years of age in May 2021, and her child support obligation would end at that time.

11.     Mr. Borca testified that he began working for GreenView Partners, LLC in April or May of 2020. Mr. Borca presented an employee pay stub for the pay period of January 10, 2021 through January 23, 2021 showing gross biweekly earnings of $1,495.82. He testified that he typically works more hours in the spring and summer, resulting in higher income. The Debtors presented updated Schedules I and J reflecting gross monthly income of $2,513.33 for Mr. Borca and $5,436.88 for Ms. Borca and net income of $2,194.08 each month, up from the $783.92 net income amount as of the Petition Date. The Debtors' updated net income includes Mr. Borca's

---

[4] Ms. Borca explained that on the Petition Date, she worked both at Bonefish Grill and G.58 Cuisine, and post-petition she received a promotion at G.58 Cuisine that led her to leave Bonefish Grill and work solely at G.58 Cuisine. Ms. Borca did not state when she received the promotion at G.58 Cuisine.

5

ongoing VA disability payments in the amount of $1,255.00 and does not account for the monthly payment of $379.00 under the Modified Plan. At the conclusion of the hearing on February 24, 2021, the court declined to allow the Motion to Incur Debt, citing the inequities that would result from allowing the Motion to Incur Debt so soon after extending the Debtors' repayment period to their creditors under the Modified Plan. At the request of the Debtors, the court continued the hearing on the Motion to Incur Debt.

12.    The Trustee filed the Trustee's Motion to Modify approximately four weeks after the initial hearing on the Motion to Incur Debt. In the Trustee's Motion to Modify, the Trustee notes that Mr. Borca's employment-related income has increased by seven percent, and Ms. Borca's income has increased by ninety-eight percent since the Petition Date. The Trustee also notes the Debtors' reduced current and anticipated expenses since the Petition Date and asserts "[t]he collective changes to household income and expenses . . . constitute a substantial and unanticipated change in the Debtors' financial condition since modification of their Plan in November 2020."

13.    The Trustee proposes that the Modified Plan be modified to require $24,504.00, as paid through March 2021, followed by $1,239.00 per month for two months, followed by $1,798.00 per month for twenty-three months beginning in June 2021, for a modified plan base of $68,336.00 and a modified plan length of sixty months through April 2023, when the Debtors' originally confirmed Plan was set to end. The Trustee's proposed modification accounts for an anticipated housing expense in the amount of $2,000.00 based on the Motion to Incur Debt that was pending when the Trustee filed the Trustee's Motion to Modify.[5] The proposed modification does not include Mr. Borca's monthly VA disability payment in the calculation of funds that are

---

[5] The court ultimately denied the Motion to Incur Debt in an Order entered on May 11, 2021.

available to pay to creditors.[6] The Trustee asserts that the proposed modification does not violate the time limits set forth in 11 U.S.C. § 1329(c) and would result in an approximate thirty-six percent dividend to general unsecured creditors.

14.    In the Fourth Circuit, a "party seeking modification [must] demonstrate[] that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007) (quoting *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)). This standard is implemented to preserve the doctrine of *res judicata* as it relates to a court's prior order confirming a plan or modified plan. The Trustee, as the party seeking modification, bears the burden of proof. *In re Matusak*, No. 14-02032-5-SWH, 2017 Bankr. LEXIS 3166, at *8 (Bankr. E.D.N.C. Sept. 19, 2017). Applicable to any modification under 11 U.S.C. § 1329(a) are 11 U.S.C. §§ 1322(a), 1322(b), and 1323(c) and the requirements of 11 U.S.C. § 1325(a), including the requirement of § 1325(a)(3) that the plan be proposed in good faith. 11 U.S.C. § 1329(b)(1); 11 U.S.C. § 1325(a)(3).

15.    In the Response, the Debtors raise three primary arguments against the Trustee's Motion to Modify. First, the Debtors assert as follows:

> The re-opening of restaurants to pre-COVID levels was completely anticipated on November 17, 2020 [when the court entered the Consent Order confirming the Modified Plan]. The Motion filed by the Debtors[] on October 14, 2020 stated that the reason for the CARES Act modification was due to the restaurant shut-downs resulting from COVID. Although the exact trajectory of the pandemic and the response of various governmental regulators and restaurant patrons has never been proved fully predictable, it was widely known on November 17, 2020 that herd

---

[6] The Honoring American Veterans in Extreme Need Act of 2019, also known as the HAVEN Act, added to the list of income excluded from "current monthly income" "any monthly compensation, pension, pay annuity, or allowance paid under title 10, 37, or 38 in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services, except that any retired pay excluded under this subclause shall include retired pay paid under chapter 61 of title 10 only to the extent that such retired pay exceeds the amount of retired pay to which the debtor would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title." Pub. L. No. 116-52, 133 Stat. 1076 (2019); 11 U.S.C. § 101(10A)(B)(ii)(IV). The Trustee explained that he calculated the proposed modified payment under the assumption that Mr. Borca's VA disability income should also be excluded from a calculation of the Debtors' income and ability to pay for purposes of a plan modification.

      immunity (aided by vaccines) would eventually be achieved and that lock downs were not a viable long-term solution to the COVID problem.

In other words, the Debtors assert that the Trustee cannot carry his burden to show that the Debtors' increase in income since confirmation of the Modified Plan was unanticipated.

    16.    Second, the Debtors assert that the Trustee may not propose a modified plan that provides for payments over a period of time that expires after the Debtors' applicable commitment period of thirty-six months. The Debtors cite 11 U.S.C. § 1329(c), which provides that a modified plan "may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period . . . ." 11 U.S.C. § 1329(c). The Debtors argue that "[a]lthough "for cause" may be found if a debtor needs additional time to make plan payments, it should never be found to increase distributions on general unsecured claims."

    17.    Third, the Debtors assert that the proposed modification has not been made in good faith, and it "is an abuse of the provisions, purpose and spirit of chapter 13."

<u>The Debtors have Experienced a Substantial and Unanticipated Change in Circumstances</u>

    18.    The increase in income that the Debtors have experienced since the Petition Date clearly is substantial. *See Matusak*, 2017 Bankr. LEXIS 3166, at *10 (finding an approximate seventy-three percent increase in income post-petition to be substantial). The Debtors sought modification of the Plan in October 2020 after they became unable to maintain payments that had been feasible based on their income as of the Petition Date. Presumably, then, the Debtors' income may have been even lower as of confirmation of the Modified Plan than it was on the Petition

Date, making the increase from November 2020 to the filing of the Trustee's Motion to Modify even more substantial.[7]

19.    To determine whether an increase is "unanticipated," "a court must evaluate 'whether a debtor's altered financial circumstances could have been reasonably anticipated at the time of confirmation by the parties seeking modification.'" *Matusak*, 2017 Bankr. LEXIS 3166, at *10-11 (quoting *In re Fitak*, 92 B.R. 243, 250 (Bankr. S.D. Ohio 1988)).  As a preliminary matter, the Debtors argued at the hearing that the Trustee should be required to testify, subject to cross examination, to satisfy his burden of proving that he could not have reasonably anticipated the Debtors' increase in income.  Although there are undoubtedly circumstances where testimony from the Trustee would be necessary to prove he did not anticipate a change, in this case, counsel for the Trustee was able to cite from the case record the Debtors' Motion to Modify and the Debtors' testimony from February 24, 2021 and proffer to the court that the Debtors never indicated, to the Trustee or the court, that they anticipated their income to rebound so significantly after confirmation of the Modified Plan.

20.    The court also notes that there is disagreement among the parties as to *what* exactly was or was not anticipated.  At both hearings on the Trustee's Motion to Modify, the parties discussed whether the Trustee could have anticipated restaurants expanding their opening hours and dining capacities between November 2020 (confirmation of the Modified Plan) and March 2021 (the filing of the Trustee's Motion to Modify), allowing for Ms. Borca to increase her monthly income in a relatively short period of time.

---

[7] The Debtors have not presented evidence of Mr. Borca's income around the time the Debtors filed the Debtors' Motion to Modify.  At the February 24, 2021 hearing on the Motion to Incur Debt, Ms. Borca presented pay stubs showing gross biweekly income of $1,028.29 for the period ending September 18, 2020, $1,166.90 for the period ending October 2, 2020 and $1,300.61 for the period ending October 30, 2020.  That income, averaged on a monthly basis, is slightly lower than Ms. Borca's gross monthly income of $2,742.76 on the Petition Date, although the court notes that Ms. Borca's income consistently increased with each pay period during that time.

21. At the hearing on June 10, 2021, the Trustee asserted that the reopening of restaurants aside, the court should examine whether the Trustee could have anticipated Ms. Borca's income increasing after confirmation of the Modified Plan to an amount that is ninety-eight percent higher than her income on the Petition Date. In other words, the issue is not whether the Trustee could have anticipated that as restaurants recovered from the pandemic, Ms. Borca would return to her pre-pandemic wages. What the Trustee could not have anticipated, based on the case record (including no record of disclosure that Ms. Borca received a promotion and began working full time at G.58 Cuisine), was that Ms. Borca would return to her pre-pandemic income amount *and* that that amount would be nearly double her income on the Petition Date. The Debtors went from being "strapped financially" to having substantially more income than they did on the Petition Date, rather than merely rebounding back to their Petition Date income level – the only income of which the Trustee had knowledge according to the record. The Trustee has carried his burden to establish that he could not have reasonably anticipated that Ms. Borca's income would be ninety-eight percent higher than her Petition Date income, mere months after confirmation of the Modified Plan.

The Proposed Modification Does Not Violate § 1329(c)

22. The Debtors assert that the Fourth Circuit Court of Appeals case of *Pliler v. Stearns*, 747 F.3d 260 (4th Cir. 2014) is applicable to the circumstances of this case. In *Pliler*, the Court was tasked with determining whether an above-median income debtor is required to maintain a bankruptcy plan for five years unless all unsecured creditor claims are paid in full, even if the debtor has negative disposable income. 747 F.3d at 262. The Court stated that –

> Section 1329 expressly incorporates the applicable commitment period as a temporal limit for purposes of plan modification. . . . As we saw in *Carroll* [*v. Logan*], for example, Section 1329 modification may be used to increase plan payments to creditors in the event that the debtors come into additional, unforeseen

> income. 735 F.3d 147 [(4th Cir. 2013)]. But a modified plan 'may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due . . . .' 11 U.S.C. § 1329(c). The modification statute thus 'defines the temporal window within which modified payments . . . may be made by reference to the applicable commitment period.' *In re Flores*, 735 F.3d [855,] 859-60 [(9th Cir. 2013)]. In other words, for purposes of plan modification, the applicable commitment period appears to serve as a measure of plan duration wholly unrelated to debtors' disposable income.

*Id.* at 266. The Debtors' reliance on this excerpt from *Pliler* is misplaced. That portion of the opinion was in response to the Plilers' assertion that the applicable commitment period "exists solely for its function within the confines of § 1325(b)(1)(B)," and the Court was making the point that § 1329 also incorporates the applicable commitment period into plan modifications. *See id.* Of course, the Fourth Circuit Court of Appeals did not include in its quotation of § 1329(c) the portion allowing the court to approve a longer modified plan period for cause, but that exclusion is because that language was not relevant to the Court's point.

23.     The Debtors assert that the maximum plan lengths set by 11 U.S.C. § 1322(d) and the applicable commitment period set out in 11 U.S.C. § 1325(b)(4) are meant to protect below-median income debtors from being forced to commit their income for unreasonably long periods of time. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 117 (1977) ("[I]nadequate supervision of debtors attempting to perform under wage earner plans [has] made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude . . . ."). The Debtors argue that the language of § 1329(c) regarding the length of a modified plan should be applied with that policy in mind. The Debtors also cite a treatise which states that § "1329(c) makes it unmistakably clear that no plan modified after confirmation may extend beyond the maximum period permitted for an original plan under section

11

1322(d)," 8 Collier on Bankruptcy ¶ 1329.07 (16th ed. 2021); however, the context of that sentence, as is evident by the footnote citing *Christensen v. Black (In re Black)*, 292 B.R. 693 (B.A.P. 10th Cir. 2003), is that a debtor may not modify a plan to extend beyond the five-year maximum imposed by § 1322(d).

24. A reading of Collier as the Debtors suggest would ignore the provision in § 1329(c) allowing for approval of a longer repayment period "for cause." The court recognizes that in the context of initial plan confirmation, some courts have found that if a below-median income debtor's plan is to last longer than three years, then the longer repayment period must be voluntary and not at the behest of an objecting creditor. *See In re Porter*, 102 B.R. 773, 777 (B.A.P. 9th Cir. 1989) (collecting cases). In the context of a plan modification, the Debtors cite *In re Moglia*, No. 11-35022-elp13, 2014 Bankr. LEXIS 5197 (Bankr. D. Or. Dec. 30, 2014). In that case, the court interpreted § 1329(a)(2) (allowing the plan to be modified to extend the time for repayment) and § 1329(c) "as allowing more time to make payments on a 36-month plan (such as if a debtor needs additional time to cure mortgage arrearages or finish paying off a car), not allowing [extension] from 36 to 60 months at the instigation of a creditor seeking to increase his recovery." 2014 Bankr. LEXIS 5197, at *7.

25. The Debtors also point out that Judge Humrickhouse in this district has declined to extend a below-median income debtor's thirty-six month plan to sixty months at the request of an unsecured creditor. Judge Humrickhouse found that "providing unsecured creditors with an increased dividend is insufficient on its own to constitute "cause" [to extend a plan's length] under § 1329(c)." *Matusak*, 2017 Bankr. LEXIS 3166, at *13-14 (citing *In re Karayan*, 82 B.R. 541, 544 (Bankr. C.D. Cal. 1988)).

26. The court finds the *Matusak* case distinguishable for at least two reasons. First, the debtor in that case had a thirty-six month plan and had not previously extended his plan beyond his applicable commitment period. Second, in denying the creditor's motion to modify the debtor's plan, Judge Humrickhouse noted that the debtor had "exemplified qualities of an honest and forthright debtor, including diligently remitting all chapter 13 plan payments on time, even during months in which his income decreased significantly." 2017 Bankr. LEXIS 3166, at *14. In this case, the Debtors' Plan had a term of sixty months, and the Modified Plan has an even longer term of ninety months. The Debtors also have not exemplified the qualities of honest and forthright debtors. Although they may not have acted in bad faith, the Debtors' reduction to their monthly payments through the Modified Plan, followed very shortly by their attempt to better their financial situation by purchasing and building equity in real property, certainly is not indicative of an earnest effort to repay creditors in a timely manner.

27. The court finds the reasoning of the United States District Court for the Middle District of Alabama persuasive from its opinion issued in *McKinney v. Russell*, 567 B.R. 384 (M.D. Al. 2017). In that case, the debtor had a three-year applicable commitment period, but, like the Debtors, she elected to propose a five-year plan to enable her to retain her vehicle. 567 B.R. at 388. A little over two years after she filed her petition, the debtor was involved in a car accident. *Id.* The debtor obtained court approval to substitute the collateral securing the debt owed to her vehicle lender, but she did not disclose that she was pursuing a personal injury claim related to the accident. *Id.* Three years and eighteen days after the petition date, and over nine months after the accident, the debtor sought court approval to employ counsel in her personal injury action and accepted a settlement shortly thereafter. *Id.* at 388-89. The trustee sought modification of the debtor's plan, but the bankruptcy court denied the trustee's motion and a subsequent motion to

reconsider, determining that the trustee had not shown cause for the proposed modified plan to extend beyond the debtor's applicable commitment period in order to "capture" the net proceeds from the settlement. *Id.* at 389, 392.

28.     The district court considered the matter on appeal.  The district court noted the continuing duty of Chapter 13 debtors to disclose evolving financial circumstances and the "whiff of gamesmanship that lingers around the timing of the Debtor's pursuit of the personal-injury cause of action." *Id.* at 389-90, 394-95.  It also noted that "[c]ause is not defined in the Bankruptcy Code . . . , and courts have found the legislative use of such a broad, open term indicates that cause 'is left to judicial discretion, to be decided on a case-by-case basis.'" *Id.* at 393 (quoting *In re Poff*, 7 B.R. 15, 17 (Bankr. S.D. Ohio 1980)).  The district court placed significant weight on the fact that the debtor had previously elected to perform under a sixty-month plan in order to retain her vehicle, and while the original plan length did not "render unnecessary a showing of cause" in order for the modified plan to last beyond the debtor's applicable commitment period, it did "ameliorate concerns expressed in the jurisprudence and commentary that Chapter 13 debtors should not be forced into plans of extended length." *Id.*  The district court found that under the circumstances of the debtor's case, "[t]he unmistakable lack of balance between benefits and burdens underpins the finding of cause for modification." *Id.* at 394.

29.     Similar to the debtor in *McKinney v. Russell*, the Debtors elected to extend their repayment term to reduce their monthly financial burden and maintain encumbered collateral.  In this case, the Debtors extended the Plan a second time to make their monthly payments even more manageable, and as soon as they recovered from the financial injuries they had suffered as a result of the pandemic, they thought not about all of their forestalled creditors, but instead about how they could benefit from their turn of fortune.

14

30. The court also notes that based on the record, it is unclear when Ms. Borca began receiving her current level of income at G.58 Cuisine. It is possible that the substantial increase in income occurred years ago, as Ms. Borca testified that she received the promotion post-petition but did not specify when, and she also stated that she has "been the solo manager for . . . G.58 for the last three years." The Debtors apparently never disclosed the change in employment and income to the Trustee or the court before the Debtors referenced Ms. Borca's employment position in the Debtors' Motion to Modify and Ms. Borca testified about her employer and income in February 2021. This lack of transparency may have run afoul of the disclosure directives in the court's Order and Notice to Debtor issued at the outset of this case, and it further supports a finding of cause to approve a longer repayment period under 1329(c).

31. The Trustee's proposed modification shortens the Modified Plan from its current length back to the original length of the Plan, and although it increases the monthly payments, the Debtors would still be able to discharge a significant amount of unsecured debt much sooner than the anticipated discharge under the Modified Plan. Under the circumstances of this case, the court finds that sufficient grounds exist to increase the Debtors' plan payments in accordance with their increased ability to repay creditors, and cause exists for the repayment period to extend beyond the Debtors' three-year applicable commitment period.

The Trustee has Proposed the Modification in Good Faith

32. The Trustee asserts that in evaluating the "good faith" requirement of 11 U.S.C. § 1325(a)(3), the court should consider the analysis of the United States Bankruptcy Court for the Eastern District of Tennessee in *In re Moore*, 602 B.R. 40 (Bankr. E.D. Tenn. 2019). In that case, the court considered a trustee's proposed modification in light of the totality of the circumstances

of the debtors' case in order to determine good faith. 602 B.R. at 51.  In *Murphy*, the Fourth Circuit Court of Appeals also appeared to do just that:

> Murphy . . . is seeking to pocket over $80,000 by selling his residence less than a year after his plan was confirmed, without paying a portion of that money to his unsecured creditors, who are receiving under the current confirmed plan only about thirty-seven cents on the dollar. In exercising his fiduciary duty, the Chapter 13 trustee proposed the modification in good faith to prevent Murphy from receiving such a substantial windfall.

474 F.3d at 153.

33. The Debtors cite the Fourth Circuit Court of Appeals case of *Deans v. O'Donnell* and argue that the court must examine whether the Trustee's proposed modification constitutes "an abuse of the provisions, purpose, or spirit of" Chapter 13 of the United States Bankruptcy Code. 692 F.2d 968, 972 (4th Cir. 1982) (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)).  The court has already found that the proposed modification does not violate § 1329(c), and the modification is permissible under § 1329(a)(1) and (2).  The purpose of the modification is to allow the Debtors' unsecured creditors to share in the Debtors' improved circumstances consistent with the applicable standards of *Murphy* and *Arnold*.  The Trustee excluded Mr. Borca's VA disability income from his calculations and tailored the modification to be feasible even if the Debtors ultimately are permitted to purchase a residence with a monthly payment similar to the amount proposed in the Motion to Incur Debt.  The modification does not run afoul of the standard set in *Deans v. O'Donnell*, and the court finds that the Trustee has proposed the modification in good faith.

34. The Trustee's proposed modification is permissible under § 1329(a)(1) and (2), it complies with the requirements of § 1329(b)(1), and it is not inconsistent with the limitation set in § 1329(c). The Trustee's Motion to Modify should be allowed; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Trustee's Motion to Modify be, and hereby is, allowed; and

2. The Modified Plan be, and hereby is, further modified to require $24,504.00 as paid through March 2021, followed by $1,239.00 per month for two months, followed by $1,798.00 per month for twenty-three months beginning in June 2021, for a modified plan base of $68,336.00 and a modified plan length of sixty months through April 2023.

END OF DOCUMENT