IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-cv-330-BO

| | | |
|---|---|---|
| VINCENT BORCA, PENNYLANE LOVE BORCA, *Appellants*, | ) ) ) ) | |
| v. | ) ) | O R D E R |
| JOHN F. LOGAN, trustee, *Appellee*. | ) ) ) | |

This cause comes before the Court on the Borca's appeal of an order of the bankruptcy court for the Eastern District of North Carolina entered on August 2, 2021. DE 1-1. For the reasons discussed below, the decision of the bankruptcy court is affirmed.

BACKGROUND

On April 23, 2018, appellants Vincent and Pennylane Borca ("Debtors") filed a petition for Chapter 13 Bankruptcy, 11 U.S.C. § 1301, *et. seq.* John Logan ("Trustee"), appellee, was appointed as trustee to fulfill the duties set forth in § 1302. Debtors filed the requisite information and, based on the calculation of the Debtor's monthly income, their applicable commitment period under § 1325(b)(4) was three years. On May 8, 2018, the Debtors filed a chapter 13 plan that would allow them 5 years to complete the 3-year commitment period plan. They planned to pay $630.00 per month for 1 month, followed by $783.00 per month for 59 months. This Original Plan allowed debtors to retain possession of their two vehicles and to pay in full several unsecured creditors. The Original Plan was confirmed by the bankruptcy court on November 1, 2018.

On October 14, 2020, Debtors filed a motion seeking to modify and extend the payment terms under the Original Plan, citing COVID-19 related job and family challenges that made payments under the Original Plan schedule financially difficult. Debtors sought to reduce their

monthly payments to $378.00 per month for 60 months, beginning in November 2020. The proposal would modify the length to 90 months and was made possible by new provisions approved under the Coronavirus Aid, Relief and Economic Security Act. On November 17, 2020, the First Modified Plan was approved, changing the payment terms to: $22,564.00, as paid to the Trustee through October 2020, followed by $379.00 per month for 60 months, beginning November 2020. As a result of the extended payment terms, nearly the entire 90-month plan period would be necessary to pay in full allowed secured and priority unsecured claims, leaving a dividend for general unsecured claims which the Trustee projected to be less than one-tenth of one percent.

Approximately two months after the First Modified Plan was approved for COVID-19 hardship, Debtors filed a motion seeking authority to incur debt for the purpose of purchasing a house. A hearing on the Debtors' motion and the Trustee's response was conducted in Raleigh, North Carolina on February 24, 2021. Both Debtors testified about their financial circumstances, stating that their monthly income had dramatically increased. At the conclusion of the hearing on February 24, 2021, the court declined to allow the Motion to Incur Debt, citing the inequities that would result from allowing the Motion to Incur Debt so soon after extending the Debtors' repayment period to their creditors under the First Modified Plan.

Four weeks after the court declined to allow Debtors to incur more debt, the Trustee filed a Motion to Modify based on Debtors' testimony about their improved financial situation. The Trustee proposed that after March 2021, Debtors should pay $1,239.00 per month for two months, followed by $1,798.00 6 per month for twenty-three months beginning in June 2021, for a modified plan base of $68,336.00 ("Second Modified Plan"). This proposal would reduce the length of the plan back to 60-months, the length of the pre-pandemic plan. Under the Second Modified Plan, secured and priority claims will be paid sooner than they otherwise would under the First Modified

Plan, and the Trustee projects the dividend to general unsecured claims will increase from less than 1% to approximately 36%. A hearing on the Motion to Modify was held on May 5, 2021 and then continued to June 10, 2021, during which the bankruptcy court orally granted the Motion to Modify. The bankruptcy court issued a written opinion on August 2, 2021, granting the Motion to Modify and approving the Second Modified Plan. The Debtors filed a Notice of Appeal of the bankruptcy court's order on August 16, 2021.

## DISCUSSION

Jurisdiction over this appeal is proper pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." A bankruptcy court's findings of fact shall not be set aside unless clearly erroneous. *In re White*, 487 F.3d 199, 204 (4th Cir. 2007). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Legal conclusions made by the bankruptcy court are reviewed de novo. *In re White*, 487 F.3d at 204. Mixed questions of law and fact are also reviewed de novo. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

The standard of review for a motion to modify a Chapter 13 plan is abuse of discretion. *In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007). The Fourth Circuit has held that a court "abuses its discretion only where it has acted arbitrarily or irrationally, has failed to consider judicially recognized factors constraining its exercise of discretion, or when it has relied on erroneous factual or legal premises." *L.J. v. Wilbon*, 633 F.3d 297, 304 (4th Cir. 2011) (citation omitted) (internal quotation marks and alterations omitted).

Pursuant to 11 U.S.C. § 1329(a), a debtor, trustee, or holder of an unsecured claim may propose a modification to a Chapter 13 plan. Permitted modifications include modifications that increase or reduce the amount of payments on claims of a particular class provided for by the plan and modifications that extend or reduce the time for payments. 11 U.S.C. §§ 1329(a)(1)–(2). If a party opposes the modification, a bankruptcy court is required to decide whether to approve or disprove the proposed modification pursuant to 11 U.S.C. § 1329(b)(2). Section 1329 does not specify what justifies a plan modification, but "it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments." *In re Arnold*, 869 F.2d 240, 241 (4th Cir. 1989); *see also Carroll v. Logan*, 735 F.3d 147, 151–52 (4th Cir. 2013) ("The repayment plan remains subject to modification for reasons including a debtor's decreased ability to pay according to plan, as well as the debtor's increased ability to pay. As we have stated before, [w]hen a [Chapter 13] debtor's financial fortunes improve, the creditors should share some of the wealth," and, "[t]he Supreme Court has eschewed interpreting the Bankruptcy code such that it would deny creditors payments that the debtor could easily make.") (internal quotations omitted). After finding that "Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors," the Fourth Circuit adopted an objective test of "whether a debtor's altered financial circumstances could have been *reasonably anticipated* at the time of confirmation by the parties seeking modification" to determine whether a change was unanticipated. *In re Arnold* at 242–43 (internal quotations omitted) (emphasis in original).

Appellants argue that modification was improper because the changes to Debtors' financial circumstances were not unanticipated; that the Second Modified Plan violates § 1329(c) of the

4

Bankruptcy Code because it extends the payment period beyond the 36 months established for below-median income earners; and that the Trustee did not propose the modification in good faith.

First, the Court agrees with the bankruptcy court that Debtors experienced a substantial and unanticipated change in circumstances. The change was particularly unanticipated because it appears that Ms. Borca may have failed in her duty to disclose her G.58 promotion for up to three years before she told the court about in as part of Debtors' request to incur more debt. Even though it was anticipated that those in the restaurant industry would have more work as the pandemic receded, the Court agrees that a 98% increase in Ms. Borca's salary could not have been reasonably anticipated by a Trustee who had just consented to reducing payment amounts due to COVID. Further, a 98% increase in salary is considered substantial. *See In re Matusak*, No. 1402032-5-SWH, 2017 Bankr. LEXIS 3166, at *10 (Bankr. E.D.N.C. Sept. 19, 2017) (finding an approximate seventy-three percent increase in income post-petition to be substantial). Accordingly, the Court agrees with the conclusion that this change in financial circumstances was substantial and unanticipated.

Second, the Court finds that the bankruptcy court did not abuse its discretion when it found that Second Modified Plan does not violate § 1329(c). Debtors argue that § 1329(c) prohibits courts from imposing payment periods greater than 3 years. However, (c) also provides that the court, for cause, may approve a longer period up to 5 years. In this case, Judge Warren found cause to restore the plan to the 60-month payment period that the Debtors had requested prior to the COVID period extension. Judge Warren highlighted that bankruptcy judges have previously found cause to extend payment periods beyond three years when debtors have not been forthcoming about their financial circumstances and were believed to be engaged in gamesmanship to reduce their payments. Warren highlights that Ms. Borca testified that she received a promotion at G.58 three years prior,

5

information that was not disclosed when the Debtors asked the court to reduce their payments during the pandemic. This, coupled with the only two months between the Debtor's request to reduce payments and their assurance that they could purchase a house, gave Judge Warren sufficient doubt in the transparency of the Debtors' disclosures. Judge Warren did not abuse his discretion when he found cause to extend the payment period beyond 3-years.

Third, the bankruptcy court did not abuse its discretion when it found that the Trustee proposed the Second Modification in good faith. The purpose of the proposed second modification was to allow Debtors' unsecured creditors to share in Debtor's improved circumstances. Debtors assert that this is impermissible and violates the purpose and spirit of Chapter 13. However, the Fourth Circuit found in *Murphy v. O'Donnell (In re Murphy)*, that a trustee exercises good faith when he proposes a modification to a payment plan to prevent a debtor from receiving a substantial increase in income without sharing it with his unsecured creditors. 474 F.3d 143, 153 (4th Cir. 2007). Like the debtor in *In re Murphy*, Debtors here have dramatically increased their monthly earnings and it is not bad faith for the Trustee to attempt to share that windfall with the unsecured creditors.

The bankruptcy court did not abuse its discretion by finding that the requirements for plan modification were satisfied when it approved the Second Modified Plan.

## CONCLUSION

For the foregoing reasons, the order of the bankruptcy court [DE 1-1] is AFFIRMED.

SO ORDERED, this __19__ day of August, 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE